UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher A. Mead,

    Plaintiff,

    v.                                                        Civil Action No. 2:20-cv-71-jmc

Green Mountain Transit,

    Defendant.

**OPINION AND ORDER**
(Docs. 8, 9)

      Plaintiff Christopher A. Mead, proceeding *pro se*, brings this action against Defendant Green Mountain Transit (GMT) for disability discrimination. (Doc. 1.) Specifically, he alleges that GMT would not allow a service animal "to be present at the workplace." (*Id.* at 1, ¶ 5.) He requests an injunction ordering GMT to allow "any/all" disabled employees who require a service animal to bring them to work. (*Id.* at 2, ¶ 8.) Mead also requests $225,000 for "psychological damages" as well as reimbursement of "FMLA time taken and CTO time lost due to leave from emotional and psychological damage caused." (*Id.* ¶¶ 9–10.)

      GMT has filed a Motion to Dismiss Mead's Complaint for failure to state a claim upon which relief may be granted. (Doc. 8.) On July 28, GMT also filed a Motion to Adopt Proposed Discovery Schedule. (Doc. 9.) For the reasons stated below, the Motion to Dismiss (Doc. 8) is GRANTED, and the Motion to Adopt Proposed Discovery Schedule (Doc. 9) is DENIED as moot.

**Factual and Procedural Background**

In his Complaint, Mead broadly alleges that GMT "is in violation[] of not being in compliance with the statutes of discrimination." (Doc. 1 at 1, ¶ 4.) In particular, he alleges that GMT committed disability discrimination by refusing to allow "a [service animal] to be present at the workplace." (*Id.* ¶ 5.) By doing so, Mead contends that GMT, in effect, "alter[ed] a medical plan designed for a United States Marine Corp[s] [v]eteran suffering from PTSD, [a]nxiety[,] and [d]epression . . . by the United States Government Department of Veterans Affairs." (*Id.* ¶ 6.) Finally, paragraph 7 of Mead's Complaint simply reads: "Retaliation." (*Id.* ¶ 7.)

GMT has moved to dismiss Mead's Complaint, arguing principally that his "vague and unsupported" allegations do not meet the applicable pleading standards set forth by the United States Supreme Court and the Federal Rules of Civil Procedure.[1] (Doc. 8 at 2.) GMT points out that Mead has not identified a legal cause of action and contends that, even assuming that Mead intended to invoke the Americans with Disabilities Act (ADA), his factual allegations are insufficient to support such a claim. (*Id.* at 7–11.) GMT further argues that Mead's Complaint

---

[1] GMT also argues that Mead has not demonstrated that the Court has subject-matter jurisdiction because he has not alleged that he received a "Notice of Right to Sue" letter from the Equal Employment Opportunity Commission (EEOC) or attached a copy of such letter to his Complaint. (Doc. 8 at 11–12.) Although GMT acknowledges that paragraph 3 of Mead's Complaint asserts jurisdiction under "[t]he [EEOC] Charge No. 523-2020-00301" (*id.* at 11 n.3), it nevertheless argues that his failure to file the Notice of Right to Sue letter issued by the EEOC with his Complaint is a jurisdictional bar to his claims. However, even assuming GMT is correct that failure to file such letter would constitute a jurisdictional bar, Mead indisputably *did* attach the EEOC's "Notice of Right to Sue" letter to his Complaint. (Doc. 1-1 at 2.) In any case, GMT withdrew its argument regarding subject-matter jurisdiction at oral argument. Accordingly, the Court does not address this proposed ground for dismissal.

"does not even provide a scintilla of the roadmap necessary for GMT to provide a meaningful analysis and response" and leaves it "to blindly defend piecemeal and scattered allegations" without "the context of a cause of action." (*Id.* at 11.) Mead did not file a Response or Opposition to GMT's Motion to Dismiss. Oral argument was held via telephone on September 17, 2020.

**Analysis**

I.     **Standard of Review**

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff.

*Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558.

Similarly, Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain enough facts and "possess enough heft to show that the pleader is entitled to relief." *Id.* at 557. To satisfy this standard, the complaint must "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (internal quotation marks omitted). Thus, Rule 8 ensures that the defendant has "fair notice of the claim[s] asserted" against him. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with the requirements of Rule 8, "the court has the power, on its own initiative or in response to a motion by the defendant, . . . to dismiss the complaint." *Id.* In such a case, the court should generally grant the plaintiff leave to amend. *Id.*

Because Mead is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49,

4

56–57 (2d Cir. 2016) (per curiam). Nevertheless, the lenity afforded *pro se* litigants does not excuse them from satisfying the plausibility pleading standard "applicable to all civil complaints." *Brickhouse v. City of New York*, No 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotation marks omitted).

## II.   ADA Framework

Although Mead does not explicitly identify his cause of action within the Complaint[2] or even clearly allege that he is employed by GMT, the Court construes his Complaint as an attempt to bring a claim under Title I of the ADA, 42 U.S.C. § 12101 *et seq*. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). A court deciding a motion to dismiss an employment discrimination claim must consider the prima facie elements of the plaintiff's claim

---

[2] Although Mead indicates on his Civil Cover Sheet that his cause of action is "ADA – Employment" (Doc. 1-2), it is well settled that a civil cover sheet is not itself a pleading and it does not "replace nor supplement the filing and service of pleadings or other papers as required by law" (*id.*). Accordingly, the Court does not generally consider a civil cover sheet when determining the scope of a plaintiff's claims or the causes of action relied upon. *See Lefebvre v. Barnhart*, No. 1:05–CV–255, 2006 WL 2631789, at *1 (D. Vt. Sept. 13, 2006). Nevertheless, the Second Circuit has "expressed a willingness to permit a plaintiff to rely on a civil cover sheet in lieu of his complaint . . . where the plaintiff was proceeding *pro se*." *Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 467 (2d Cir. 2011). Thus, the Court will read Mead's Complaint liberally to include reference to the ADA.

in the context of the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *See Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *5 (E.D.N.Y. Sept. 21, 2015).

To establish a prima facie case of disability discrimination, a plaintiff must show that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability.

*McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (citation omitted). Furthermore, "[d]iscrimination in violation of the ADA includes . . . 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). Thus, a plaintiff can establish a prima facie case of disability discrimination based on the failure to accommodate his disability by demonstrating that:

> (1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the [ADA] had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan*, 711 F.3d at 125–26 (citation omitted).

To survive a motion to dismiss, a plaintiff need not prove discrimination "or even allege facts establishing every element of the . . . prima facie case, but the facts

alleged must give 'plausible support to the reduced requirements' of the prima facie case." *Thomson*, 2015 WL 5561209, at *5 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). In other words, as with any Complaint, the plaintiff must plead enough "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. Application to Mead's Complaint

The factual allegations in Mead's Complaint are far too sparse, vague, and conclusory to plausibly state a claim for disability discrimination. His factual allegations, in their entirety, read as follows:

> 4. Allegation that Green Mountain Transit is in violation[] of not being in compliance with the statutes of discrimination.
>
> 5. Discrimination of denial of a SERVICE ANIMAL to be present at the workplace.
>
> 6. Altering a medical plan designed for a United States Marine Corp Veteran suffering from PTSD, Anxiety and Depression for services rendered in Iraq whom is 100% total and permanent by the United States Government Department of Veterans Affairs.
>
> 7. Retaliation.

(Doc. 1 at 1, ¶¶ 4–7.) To begin, the allegation contained in paragraph 4 is wholly conclusory and merely states a legal conclusion that GMT violated, presumably, the ADA. Likewise, paragraph 7 simply alleges "[r]etaliation," but the Complaint is bereft of any facts in support of such a claim.[3] Mead essentially claims that GMT

---

[3] To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) he was engaged in protected activity; (2) the alleged retaliator knew that the plaintiff was engaged in protected activity; (3) an adverse decision or course of action was taken against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *See Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 148 (2d Cir. 2002); *see also* 42 U.S.C. § 12203.

violated his rights, but he fails to include any animating facts about the incidents giving rise to the alleged violations. "In the absence of factual allegations, the [c]ourt cannot determine whether [he] has a plausible entitlement to relief." *Stephens v. Chief of Police*, File No. 1:16–cv–270–jgm, 2016 WL 7408850, at *2 (D. Vt. Dec. 22, 2016); *see also Iqbal*, 556 U.S. at 678 (holding that Rule 8 requires a complaint to contain enough background facts for the court to reasonably infer that defendant is liable to plaintiff).

Paragraphs 5 and 6 of Mead's Complaint provide slightly more information but are nonetheless woefully insufficient to plausibly state a claim under the ADA. As outlined above, to state a claim for disability discrimination or failure to accommodate, Mead must plead that he has a disability within the meaning of the ADA. The ADA provides that "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA defines "major life activities" to include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Although Mead alleges that "a United States Marine Corp Veteran suffer[s] from PTSD, Anxiety and Depression," he does not allege that he is that person. (Doc. 1 at 1, ¶ 6.) Even assuming that Mead suffers from PTSD, anxiety, and depression, he does not allege that his impairments substantially limit his ability to

8

perform any major life activities. Although the term "substantially limits" is not meant to be a demanding standard, *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 613 (E.D.N.Y. 2017), Mead must still plead sufficient facts to "nudge . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. Because he fails to identify any major life activity affected by his impairments, Mead has not sufficiently alleged that he has a disability as defined by the ADA.

Similarly, paragraph 5 vaguely states that GMT refused to allow a service animal to be present "at the workplace." (Doc. 1 at 1, ¶ 5.) Mead does not allege that GMT was *his* workplace; he does not allege that he was employed by GMT or even that GMT is a covered employer under the ADA. Construing paragraph 5 liberally to infer that Mead alleges he was employed by GMT, requested to bring a service animal to work as a reasonable accommodation, and was denied that accommodation still does not save Mead's Complaint. A prima facie claim for failure to accommodate requires Mead to show that GMT had notice of his disability and that, with reasonable accommodation, he could perform the essential functions of the job at issue. *See McMillan*, 711 F.3d at 126. However, Mead does not allege that GMT had notice of his disability nor does he allege that, with the presence of a service animal, he could perform the essential functions of his job. In fact, Mead does not even allege what the essential functions of his job are, let alone what his job is. The numerous deficiencies in his Complaint require the Court to conclude that Mead has failed to plausibly state any ADA claim.

Although Mead is not required to allege specific facts establishing every element of a prima facie case of disability discrimination, his skeletal Complaint

9

does not contain even a formulaic recitation of the requirements for establishing any ADA claim. Accordingly, because Mead has failed to plausibly state a claim upon which relief may be granted, GMT's Motion to Dismiss (Doc. 8) is GRANTED.

## IV. Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Here, it is impossible to evaluate whether Mead can state a viable federal claim, "but [the Second] Circuit's precedent encourages giving [him] another opportunity." *Montpelier v. Green Mountain Care*, Case No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11, 2019). Accordingly, Mead is granted leave to amend his Complaint.

Mead is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Mead's factual allegations in their entirety and must set forth all the claims Mead has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. If Mead elects not to file an Amended Complaint within 30 days of the date of this

...

Opinion and Order, the Clerk of the Court is instructed to close this civil docket, No. 2:20-cv-71-jmc.

## **Conclusion**

For these reasons, GMT's Motion to Dismiss (Doc. 8) is GRANTED, and Mead is granted leave to file an Amended Complaint within 30 days of this Opinion and Order.  In the event an Amended Complaint is not filed within 30 days, this case will be closed with judgment for Defendant.  Furthermore, GMT's Motion to Adopt Proposed Discovery Schedule (Doc. 9) is DENIED as moot.  In the event an Amended Complaint is timely filed, the parties shall jointly prepare and file a revised proposed discovery schedule as required by Rule 26(a) of the Local Rules of Procedure.

Dated at Burlington, in the District of Vermont, this 5th day of November 2020.

/s/ John M. Conroy_____
John M. Conroy
United States Magistrate Judge